UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BILLY DRIVER,

          Plaintiff,

    v.

C. CASTILLO,  et al.,

          Defendants.

No.  2:25-cv-00950 DC CSK P

FINDINGS AND RECOMMENDATION

## I.  INTRODUCTION

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's second amended complaint.  (ECF No. 13.)  For the following reasons, this Court recommends that this action be dismissed.

## II.  PROCEDURAL BACKGROUND

On March 26, 2025, plaintiff filed the original complaint.  (ECF No. 1.)  On May 5, 2025, this Court dismissed the original complaint with leave to file an amended complaint.  (ECF No. 7.)  On May 16, 2025, plaintiff filed an amended complaint.  (ECF No. 10.)  On August 13, 2025, this Court dismissed the amended complaint with leave to file a second amended complaint.  (ECF No. 12.)  On August 25, 2025, plaintiff filed the second amended complaint.  (ECF No. 13.)

## III.  SCREENING STANDARDS

The court is required to screen complaints brought by prisoners seeking relief against a

1

governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

2

## IV.  PLAINTIFF'S SECOND AMENDED COMPLAINT

### A.  Claims in Second Amended Complaint

Plaintiff's second amended complaint is not filed on a complaint form  (ECF No. 13.) Plaintiff appears to name as defendants Correctional Counselor Castillo, Lieutenant Anderson and Officer Alvarado.  (Id. at 7.)  Plaintiff states that he is raising claims alleging deliberate indifference to his safety and enemy concerns.  (Id. at 2.)  Plaintiff alleges that on December 26, 2024 a lock-up order was issued for plaintiff based on plaintiff's safety concerns.  (Id.)  On December 30, 2024, January 9, 2025 and January 15, 2025, defendant Alvarado was asked to investigate plaintiff's safety concerns that formed the basis for the December 26, 2024 lock-up order.  (Id.)  On December 30, 2024, plaintiff told defendant Alvarado that plaintiff had staff safety concerns with defendant Alvarado.  (Id.)  For this reason, plaintiff requested that defendant Alvarado stop the investigation of plaintiff's staff and enemy concerns.  (Id.)  Plaintiff's staff safety concerns with defendant Alvarado were apparently based on defendant Alvarado's alleged refusal to investigate plaintiff's reports of threats to plaintiff by an inmate in cell 105, 4 Block, B Facility.  (Id.)  Plaintiff twice reported the threats from the inmate in cell 105 to defendant Alvarado between December 17, 2024 and December 26, 2024.  (Id.)  In response to plaintiff's reports of threats by the inmate in cell 105, defendant Alvarado told plaintiff that he was assigned to investigate plaintiff's statements regarding "staff paid inmate attacks."  (Id.)  Defendant Alvarado told plaintiff to write a grievance because as far as defendant Alvarado was concerned, defendant Alvarado was going to document that plaintiff had no staff and enemy concerns.  (Id. at 3.)

On January 9, 2025, a new lock-up order was issued by Lieutenant Darling because on January 6, 2025, defendant Alvarado documented that plaintiff had no safety and enemy concerns in B Facility.  (Id. at 3.)  The January 9, 2025 lock-up order stated that plaintiff was released to B yard where defendant Alvarado was still the 5 block housing floor guard.  (Id.)

On January 15, 2025, defendant Castillo reported to the Institutional Classification Committee ("ICC") that the staff safety concerns investigation was completed and that plaintiff was released to B Facility.  (Id. at 3-4.)  Plaintiff told the ICC that plaintiff had staff safety and

enemy concerns on B Facility with defendant Alvarado.  (Id. at 4.)  Defendant Castillo told plaintiff to write a grievance, which plaintiff did.  (Id.)

On February 25, 2025, plaintiff told defendant Anderson that plaintiff had safety and enemy concerns with defendant Alvarado on B Facility.  (Id. at 5.)  Plaintiff told defendant Anderson that if defendant Anderson housed plaintiff on B Facility, plaintiff would be attacked by inmates paid with spice, fentanyl and synthetic heroin by officers on B Facility, including defendant Alvarado.  (Id.)  Defendant Anderson threatened that he would cell-extract plaintiff the next day if plaintiff did not come out of his cell.  (Id.)  Defendant Anderson told plaintiff to write a grievance, which plaintiff did.  (Id.)  On February 26, 2025, defendant Anderson ordered plaintiff out of his cell to be escorted to B Facility.  (Id.)

Plaintiff claims that he was assaulted by inmate Stone in March 2025, and continuously by other inmates until June 10, 2025, who were paid with drugs by prison staff to assault plaintiff. (Id. at 6.)

On January 15, 2025 and June 18, 2025 at the ICC, defendant Castillo was repeatedly informed by plaintiff and Dr. Turner, Dr. Johnson and Dr. Jebanan that plaintiff had serious staff safety concerns.  (Id.)  Plaintiff claims that defendant Castillo ignored plaintiff's staff safety concerns and continues his plan to release plaintiff to the general population.  (Id. at 6-7.) Plaintiff alleges that he has been assaulted more than six different times by inmates who were paid by prison staff with drugs.  (Id. at 7.)  Plaintiff also claims that he was attacked and assaulted on B Facility from December 26, 2024 to March 13, 2025. (Id.)

**B.  Exhibits Attached to Second Amended Complaint**

To put the claims raised in the second amended complaint in context, this Court below describes the relevant exhibits attached to the second amended complaint.

Plaintiff attaches a form titled Restricted Housing Unit ("RHU") Placement Notice which describes the circumstances under which plaintiff was placed in the RHU on December 26, 2024. (Id. at 9.) This form states that on December 26, 2024, confidential information was received indicating that plaintiff had possible enemy safety/enemy concerns at California State Prison-Sacramento ("CSP-Sac") B Facility.  (Id.)  The form states that an investigation into plaintiff's

4

possible safety concerns is being conducted by Officer A. Cisneros.  (Id.)  The form states that plaintiff will remain in the RHU pending completion of an investigation, review by the Facility Captain and/or the Classification Committee regarding plaintiff's future housing and program requirements.  (Id.)

Plaintiff attaches a form titled RHU Placement Notice dated January 9, 2025.  (Id. at 10.) This form, signed by staff member Darling, states that on January 6, 2025, it was determined that plaintiff did not have any identified safety and/or enemy concerns on B Facility.  (Id.)  The form states that currently there is no available bed space in B Facility which meets plaintiff's housing requirements and plaintiff has documented enemies in A Facility.  (Id.)  For this reason, plaintiff may be retained in the RHU.  (Id.)  The form states that plaintiff will be seen by the ICC within 10 days for appropriate housing, transfer and program considerations.  (Id.)

Plaintiff attaches a Classification Committee Chrono dated January 15, 2025.  (Id. at 11-12.)  This form states that plaintiff is being issued a new RHU Placement Notice to update plaintiff's reason for RHU retention.  (Id.)  The form states that currently there is no bed space available in B Facility which meets plaintiff's housing requirements and plaintiff has enemies on A Facility.  (Id.)  The form states, "[f]or this reason, you may be retained in the [RHU] upon completion of the completion of the aforementioned investigation."  (Id.)  The form states that the investigation by defendant Alvarado was completed.  (Id.)  Defendant Alvarado concluded that plaintiff did not have localized safety concerns on B Facility at CSP-Sac and plaintiff did not have systemic safety concerns among the Enhanced Outpatient ("EOP") population.  (Id.)  The form states that plaintiff had single cell status based on a "128-B" dated 1/10/2023 by Clinical Psychologist Jebananthan recommending single cell status for plaintiff because plaintiff presented mental health issues which impacted plaintiff's ability to house safely with other inmates.  (Id.) The form also notes a "128" dated 8/08/2023 by Clinical Psychologist Chukwunta from Kern Valley States Prison  ("KVSP") recommending single cell status for plaintiff due to plaintiff's mental illness which may impact plaintiff's ability to house safely with other inmates.  (Id.)  The ICC recommended to continue plaintiff's single cell housing based on mental health's recommendations  (Id.)  This form indicates that J. Schultz was the chairperson of the ICC and

5

that defendant Castillo was the recorder.  (Id.)

Plaintiff attaches a Classification Committee Chrono dated February 19, 2025 stating  that plaintiff is being retained in the RHU because there is no bed space available in B Facility.  (Id. at 13-15.)  The ICC elected to continue plaintiff on single cell status, referring to the recommendations for single cell status by Clinical Psychologists Jebananthan and Chukwunta.  (Id.)  This form indicates that J. Schultz was the chairperson of the ICC and that defendant Castillo was the recorder.  (Id. at 15.)  Plaintiff attaches a Classification Committee Chrono dated February 25, 2025 stating that plaintiff is being retained in the RHU because there is no bed space available in B Facility.  (Id. at 16-17.)   The ICC elected to continue plaintiff on single cell status, referring to the recommendations for single cell status by Clinical Psychologists Jebananthan and Chukwunta.  (Id. at 17.)  This form indicates that S. Shepherd was the chairperson of the ICC and that defendant Castillo was the recorder.  (Id.)

Plaintiff attaches a Classification Committee Chrono dated March 27, 2025.  (Id. at 18-19.)  Plaintiff has handwritten on this form that he was released from the RHU on March 25, 2025.  (Id. at 18.)  The form states that an RHU Placement Notice dated March 13, 2025 states that plaintiff was placed in the RHU after plaintiff made statements to a staff member threatening multiple peace officers with great bodily injury and death.  (Id.)  The form states that plaintiff will be issued a Rules Violation Report for threatening a peace officer with great bodily injury or death.  (Id.)  The form states that for this reason, plaintiff's presence in the B Facility EOP represents a threat to safety and security of the institution.  (Id.)  The form states that on March 27, 2025, the ICC elected to retain plaintiff in the RHU pending adjudication of the Rules Violation Report dated March 13, 2025 for threatening great bodily injury or death.  (Id.)  The ICC elected to continue plaintiff on single cell status, referring to the recommendations for single cell status by Clinical Psychologists Jebananthan and Chukwunta.  (Id. at 18-19.)  This form indicates that C. Jackson was the chairperson of the ICC and that C. Johnson was the recorder.  (Id. at 19.)

Plaintiff attaches a Classification Committee Chrono dated June 18, 2025.  (Id. at 20-22.)  This form states that plaintiff was housed in the RHU for refusing to sign the compatibility

6

chrono with inmate Stone.  (Id. at 20.)  The form states, "Specifically, staff were releasing B7-A section when inmate STONE (BX8384, B4-101L) stepped out of his cell and rushed into your cell.  Additionally, when inmate STONE made entry into your cell the two of you were observed fighting.  By not signing the compatibility chrono, your presence in the B Facility population represents a threat to the safety and security of the institution."  (Id.)  The ICC elected to continue plaintiff on single cell status, referring to the recommendations for single cell status by Clinical Psychologists Jebananthan and Chukwunta.  (Id. at 21.)  This form indicates that S. Shepherd was the chairperson of the ICC and that C. Castillo was the recorder.  (Id.)

Plaintiff provides documents from other prisons where he was housed prior to CSP-Sac which this Court has reviewed.  (Id. at 23-38.)  Plaintiff also attaches a letter to plaintiff from a law firm and an administrative grievance.  (Id. at 39-41.)  These additional documents are not directly relevant to the claims raised in the second amended complaint.

## V.  DISCUSSION

### A.  Legal Standard for Eighth Amendment Failure-to-Protect Claim

Prison officials are obligated by the Eighth Amendment to take reasonable measures to protect prisoners from violence by others.  See Farmer v. Brennan, 511 U.S. 825, 833 (1994).  To state a failure-to-protect claim against an official, an inmate must allege: 1) that he is incarcerated under conditions posing a substantial risk of serious harm and 2) that the official was deliberately indifferent to his safety.  See id. at 834.  "Deliberate indifference" occurs when an official knows of and disregards an excessive risk of harm to an inmate's safety."  See id.  "[T]he prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

### B.  Defendant Alvarado

Plaintiff appears to claim that plaintiff had safety and security concerns with defendant Alvarado based on defendant Alvarado's alleged failure to investigate plaintiff's report of threats by the inmate in cell 105 and because defendant Alvarado paid inmates with drugs to attack plaintiff.  For the following reasons, this Court finds that plaintiff fails to state a potentially colorable Eighth Amendment claim against defendant Alvarado.

Plaintiff does not describe what plaintiff told defendant Alvarado regarding the alleged threats made against plaintiff by the inmate in cell 105. Without this information, this Court cannot find that defendant Alvarado disregarded a substantial risk of serious harm to plaintiff's safety when defendant Alvarado allegedly ignored plaintiff's report of threats. Plaintiff also appears to claim that he was assaulted by an inmate on B Facility on December 26, 2024. However, plaintiff provides no information regarding this alleged assault, including the inmate who assaulted plaintiff and whether he reported this assault to defendant Alvarado. This Court also observes that the RHU Placement Notice documenting plaintiff's placement in the RHU on December 26, 2024 makes no mention of an assault on plaintiff on that date. For these reasons, this Court cannot find that defendant Alvarado disregarded a substantial risk of serious harm to plaintiff's safety based on the alleged December 26, 2024 assault. Plaintiff also pleads no facts supporting his claim that defendant Alvarado paid any inmate, including inmate Stone, with drugs to attack plaintiff. Plaintiff's conclusory allegations that defendant Alvarado paid inmates with drugs to attack plaintiff, including inmate Stone, do not state a potentially colorable Eighth Amendment claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### C. Defendants Anderson and Castillo

Plaintiff claims that defendants Anderson and Castillo ignored plaintiff's safety concerns regarding prison officials on B Facility, including defendant Alvardo, who allegedly paid inmates with drugs to attack plaintiff. Plaintiff appears to claim that defendants Anderson and Castillo returned plaintiff to B Facility where plaintiff was attacked by inmates multiple times, including inmate Stone. The second amended complaint includes no specific facts supporting plaintiff's claim that prison officials, including defendant Alvarado, paid inmates with drugs to attack plaintiff. Plaintiff also does not specifically describe the information he provided defendants Anderson and Castillo regarding his safety concerns. Other than the attack by inmate Stone, discussed below, plaintiff also does not describe any of the alleged attacks by inmates paid with drugs by prison officials. Plaintiff's conclusory allegations that defendants Anderson and Castillo ignored plaintiff's claims that prison officials paid inmates with drugs to attack plaintiff do not

8

state a potentially colorable Eighth Amendment claim.  See Iqbal, 556 U.S. at 678.

Plaintiff also claims that during the January 15, 2025 and June 18, 2025 ICC meetings, defendant Castillo was repeatedly informed by Dr. Turner, Dr. Johnson and Dr. Jebanan that plaintiff had serious staff safety concerns.  Plaintiff does not specifically describe what Dr. Turner, Dr. Johnson and Dr. Jebanan allegedly told defendant Castillo on those dates regarding plaintiff's staff safety concerns.[1]  This Court also observes that the classification committee chronos from January 15, 2025 and June 18, 2025 reflect that, on those dates, the ICC elected to continue plaintiff on single cell status, referring to the recommendations for single cell status by Clinical Psychologists Jebananthan and Chukwunta based on plaintiff's mental illness which impacted plaintiff's ability to house safely with other inmates.  The classification committee chronos from January 15, 2025 and June 18, 2025 do not state that any doctor informed the ICC that plaintiff has serious staff safety concerns.  Plaintiff's conclusory allegations that Dr. Turner, Dr. Johnson and Dr. Jebanan informed defendant Castillo on January 15, 2025 and June 18, 2025 that plaintiff had serious staff safety concerns do not state a potentially colorable Eighth Amendment claim.  See Iqbal, 556 U.S. at 678.

To the extent plaintiff claims that defendants disregarded a threat of harm to plaintiff from inmate Stone, separate from the claim that prison staff paid inmate Stone with drugs to harm plaintiff, this Court finds that the second amended complaint pleads no facts demonstrating that inmate Stone posed a substantial risk of serious harm to plaintiff prior to the March 2025 incident and that defendants were aware of facts from which an inference could be drawn that inmate Stone posed a substantial risk or serious harm to plaintiff prior to the March 2025 incident.  For these reasons, the second amended complaint does not state a potentially colorable Eighth Amendment claim against defendants on the grounds that they ignored a substantial risk of serious harm to plaintiff from inmate Stone prior to the March 2025 incident.

## VI.  DISMISSAL WITH NO LEAVE TO AMEND

On May 5, 2025, this Court dismissed the original complaint with leave to file an

---

[1]  It appears likely that Dr. Janthan is Dr. Jebananthan referred to in the classification committee chronos.

amended complaint with instructions regarding how to state a potentially colorable Eighth Amendment failure-to-protect claim.  (ECF No. 7 at 5-6.)  On August 13, 2025, this Court dismissed plaintiff's amended complaint with leave to file a second amended complaint with instructions regarding how to state a potentially colorable Eighth Amendment failure-to-protect claim.  (ECF No. 12 at 4-5.)  As discussed above, the second amended complaint does not state a potentially colorable Eighth Amendment failure-to-protect claim.  Because it does not appear that plaintiff can cure the pleadings defects regarding his Eighth Amendment failure-to-protect claim, no further amendments of plaintiff's complaint should be permitted.  See Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 2000) (en banc) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies in the complaint cannot be cured by amendment.'").  Accordingly, this Court recommends that this action be dismissed without leave to amend.

## VII.  CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed without leave to amend; and the Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 4, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Driv950.ord/2

10